UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

DONNA M. PACKARD,

                Plaintiff,

      v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                Defendant.

**DECISION
and
ORDER**

**16-CV-00560V(F)
(consent)**

———————————————————————

APPEARANCES:          LAW OFFICES OF KENNETH R. HILLER
                                 Attorneys for Plaintiff
                                 IDA M. COMERFORD, of Counsel
                                 6000 North Bailey Avenue
                                 Suite 1A
                                 Buffalo, New York 14226

                                 JAMES P. KENNEDY, JR.
                                 UNITED STATES ATTORNEY
                                 Attorney for Defendant
                                 MARIA FRANGASSI SANTANGELO
                                 Assistant United States Attorney, of Counsel
                                 Federal Centre
                                 138 Delaware Avenue
                                 Buffalo, New York 14202, and

                                 STEPHEN P. CONTE
                                 Regional Chief Counsel
                                 United States Social Security Administration
                                 Office of the General Counsel, of Counsel
                                 26 Federal Plaza
                                 Room 3904
                                 New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

**JURISDICTION**

On June 19, 2018, the parties consented, pursuant to 28 U.S.C. § 636(c) anda Standing Order (Dkt. No. 22), to proceed before the undersigned. (Dkt. No. 22-1). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings, filed on December 23, 2016, by Plaintiff (Dkt. No. 13), and on March 7, 2017, by Defendant (Dkt. No. 16).

**BACKGROUND**

Plaintiff Donna Packard, ("Plaintiff" or "Packard"), seeks review of Defendant's decision denying her Disability Insurance benefits and Supplemental Security Income ("SSI") ("disability benefits"), under Title II and Title XVI of the Social Security Act ("the Act"). In denying Plaintiff's applications for disability benefits, Defendant determined that Plaintiff had Crohn's disease, asthma, and depression, sensorineural hearing loss, alcohol addiction and a disc abnormality that were not severe impairments, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 21-23).[2] Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform a full range of work at all levels of exertion, with limitations to no work in areas with unprotected heights, around heavy moving or dangerous machinery, exposure to excessive pulmonary irritants, and occasional limitations to maintaining concentration and attention for extended periods of

---

[2] "R" references are to the page numbers of the Administrative Record electronically filed in this case for the Court's review. (Dkt. No. 8).

time, responding appropriately to changes in the work setting and dealing with stress. (R. 24). As such, Plaintiff was found not disabled, as defined in the Act, at any time from Plaintiff's alleged onset date of January 1, 2012, through the date of the Administrative Law Judge's decision on May 14, 2015.

## **PROCEDURAL HISTORY**

Plaintiff filed an application for disability benefits on January 9, 2013 (R. 386-92), that was initially denied by Defendant on March 15, 2013. On February 5, 2015, Plaintiff, represented by Elizabeth Huang, Esq. ("Huang"), appeared and testified at a hearing before Administrative Law Judge Robert T. Harvey ("Judge Harvey" or "the ALJ"), along with vocational expert ("VE") David Cypher ("Cypher" or "VE") in Buffalo, New York. (R. 43-79). The ALJ's decision denying Plaintiff's claim was rendered on May 14, 2015. (R. 19-31). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on May 12, 2016. (R. 1-5). This action followed on July 11, 2016, with Plaintiff alleging that the ALJ erred by failing to find her disabled. (Dkt. No. 1).

On December 23, 2016, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Dkt. No. 13) ("Plaintiff's Memorandum"). Defendant filed, on March 7, 2017, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Dkt. No. 16) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion on the pleadings on April 27, 2017 ("Plaintiff's Reply Memorandum") (Dkt. No. 21). Oral

argument was deemed unnecessary. Based on the following, Plaintiff's motion for judgment on the pleadings is DENIED; Defendant's motion for judgment on the pleadings is GRANTED.

## **FACTS[3]**

Plaintiff was born on July 10, 1960, and alleges that she is unable to work as a result of depression, Crohn's disease, sensorineural (inner ear) hearing loss and asthma. (R. 199). Facts pertinent to the issues raised in Plaintiff's Memorandum include Plaintiff's visit on March 5, 2013, to Maria Nickolova, M.D. ("Dr. Nickolova"), who completed an initial psychiatric evaluation of Plaintiff noting Plaintiff reported anxiety without panic attacks, decreased concentration and energy, poor memory, sleep and appetite, with infrequent attacks of symptoms. (R. 416). Dr. Nickolova evaluated Plaintiff with a cooperative mood, with affect appropriate to depression, coherent thought processes, fair attention span and concentration, intact memory, judgment and insight, diagnosed Plaintiff with major depressive disorder recurrent moderate (R. 418), and continued to provide psychotherapy treatment to Plaintiff and evaluate Plaintiff with similar results on April 10, 2013 (R. 419-21), May 10, 2013 (R. 423-25), July 9, 2013 (R. 430-32), October 28, 2013 (R. 434-36), December 4, 2013 (R. 438-40), January 28, 2014 (R. 442-44), February 25, 2014 (R. 446-48), March 25, 2014 (R. 450-52), May 29, 2014 (R. 454-56), June 26, 2014 (R. 458-60), September 2, 2014 (R. 462-64), and December 2, 2014 (R. 466-68).

---

[3] Taken from the pleadings and administrative record.

On June 13, 2013, to M.W. Wood, M.D. ("Dr. Wood"), who upon completing a physical examination, diagnosed Plaintiff with non-specific colitis, likely Crohn's disease. (R. 514).

On July 10, 2013, Donna Miller, D.O. ("Dr. Miller"), completed a consultative internal medical examination on Plaintiff noting Plaintiff's reported activities of daily living included daily laundry, weekly cleaning, and hobbies that include watching television, listening to the radio and reading. (R. 380). Upon administering a pulmonary function spirometry test (R. 383-87), Dr. Miller noted that Plaintiff should avoid exposure to dust, irritants, and tobacco which may exacerbate Plaintiff's asthma. (R. 382). That same day, Kevin Duffy, Ph.D., ("Dr. Duffy"), completed a consultative psychiatric evaluation of Plaintiff and opined that Plaintiff had a mild impairment to attention and concentration, grossly intact memory skills, average cognitive functioning, fair insight and judgment (R. 376), the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, make appropriate decisions, relate adequately with others, deal appropriately with stress and a mild difficulty learning new tasks. (R. 377).

On February 27, 2014, Dr. Wood evaluated Plaintiff at the request of Plaintiff's primary physician Jennifer Corliss, M.D. ("Dr. Corliss"), and noted that Plaintiff was feeling well except for an episode of gastric symptoms after eating processed food and that Plaintiff was stable on her medication. (R. 520-21). On January 13, 2015, Dr. Wood noted that Plaintiff reported frequent episodes of loose stool and opined that Plaintiff's intermittent symptoms were likely the result of inflammatory bowel disease ("IBS") and dietary issues, that Plaintiff's lower left quadrant pain was a likely result of

5

Plaintiff's menstrual cycle, and that Plaintiff had no definite small bowel disease. (R. 522-24).

On January 21, 2015, Dr. Nickolova completed a psychiatric residual functional questionnaire on Plaintiff and opined that Plaintiff was unable to complete a normal workweek without interruptions from psychologically-based symptoms, respond appropriately to changes in a routine work setting, deal with normal work stress (R. 473), and stress of semi-skilled and skilled work as a result of stress (R. 474), or engage in full-time competitive employment. (R. 476).

On January 28, 2015, Dr. Wood completed a Crohn's and colitis residual functional capacity questionnaire and evaluated Plaintiff with symptoms of diarrhea, abdominal pain and cramping, intermittent exacerbations sometimes precipitated by stress, noted that Plaintiff's symptoms interfere with her attention and concentration, that Plaintiff would require a job with ready access to a restroom, require frequent unscheduled restroom breaks during an eight-hour workday with the ability to lie down at unpredictable intervals and that Plaintiff's bowel disease was not severe but a potential contributing factor to Plaintiff's psychological issues. (R. 524-30).

1. **Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . .. An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to

> do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to perform any past relevant work, the burden shifts to the Commissioner to prove there is alternative employment in the national economy suitable to the claimant. *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

## A.     **Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law judge's findings are supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires enough evidence that a reasonable person would "accept as adequate to support a conclusion." *Consolidated Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating

physician's opinion will be given controlling weight.  *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence.  *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3).  "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  If the claimant is engaged in such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*  The next step is to determine whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities as defined in the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an impairment and the impairment, or an equivalent, is listed in Appendix 1 of the regulations and meets the duration requirement, the individual is deemed disabled,

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

regardless of the applicant's age, education or work experience, 20 C.F.R. §§ 404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§ 423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646 F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e).  If the applicant can still perform work he or she has done in the past, the applicant will be denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past work, the Commissioner will consider the individual's "residual functional capacity," age, education and past work experience in order to determine whether the applicant can perform any alternative employment.  20 C.F.R. §§ 404.1520(f), 416.920(f).  *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work").  If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment.

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

9

*Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson*, 402 U.S. at 410.

**B.     Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In this case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2012, the date of Plaintiff's application for disability benefits. (R. 21). Plaintiff does not contest this determination.

**C.     Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and

usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of asthma, Crohn's disease and depression, that Plaintiff's sensorineural hearing loss and alcohol abuse were not severe, and that Plaintiff did not have an impairment or combination of impairments as defined under 20 C.F.R. § 404.920(c). (R. 21-24). Plaintiff does not contest the ALJ's step two findings.

**D.     Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is considered disabled. 20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d. 45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed impairments, the claimant is considered disabled"). The relevant listings of impairments in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 3.00 ("§ 3.00") (Respiratory System), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 5.00 ("§ 5.00") (Digestive System), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 12.04 ("§ 12.04") (Affective Disorders). In this case, the ALJ found that Plaintiff's impairments did not meet or equal the criteria for disability under §§ 3.00, 5.00, or 12.04 of listed impairments. Plaintiff does not contest the ALJ's findings under step three of the disability review process.

11

## E. Residual Functional Capacity

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts, at the fourth step, to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove that substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels with limitations to working in areas with unprotected heights, around moving or dangerous machinery, areas exposed to excessive pulmonary irritants, no climbing ropes, ladders or scaffolds, and occasional limitations to maintaining attention and concentration for extended

periods and responding appropriately to changes in the work setting and dealing with stress. (R. 24).

Plaintiff contends that the ALJ erred by not including limitations resulting from Plaintiff's Crohn's disease in the hypothetical questions posed by the ALJ to the VE, and mischaracterizing Plaintiff's testimony on her need for frequent bathroom breaks. Plaintiff's Memorandum at 11. Plaintiff relies on Lowe v. Colvin ("*Lowe*"), 2016 WL 624922, at *6 (W.D.N.Y. Feb. 17, 2016), to support of Plaintiff's contention that Plaintiff's need for frequent bathroom breaks results in a finding that Plaintiff is disabled. Plaintiff's Memorandum at 13-14. Plaintiff's contention is without merit.

Plaintiff testified that she experienced flare-ups from her Crohn's disease as a result of not taking her medication (R. 52-53), left work because of her depression (R. 64), uses the bathroom three to four times daily (R. 65), and is occasionally required to dash for the bathroom. (R. 66). On June 13, 2013, Dr. Wood noted that Plaintiff had only mild gastroenterological flare-ups and retired from work as a result of her depression, not the Plaintiff's Crohn's condition. (R. 516). On February 24, 2014, Dr. Wood noted that Plaintiff reported doing well with only one episode of gastroenterological symptoms after eating processed food and noted that Plaintiff reported that she only experienced gastric symptoms when she failed to take her medication. (R. 519). On January 13, 2015, Dr. Wood diagnosed Plaintiff with enteritis of the large intestine and opined that Plaintiff's intermittent symptoms were more likely from IBS and poor diet rather than Crohn's disease. (R. 524). Such evidence supports the ALJ's determination not to include limitations from Plaintiff's IBS in the hypothetical questions posed to the VE. Moreover, Plaintiff's assertion that the Plaintiff in *Lowe* is

similarly situated to Plaintiff is misplaced. The plaintiff in *Lowe* experienced polyuria[4] with constant, mild, aching abdominal pain, chills, fever, nausea, urgency, urinary frequency, vomiting, blood in her stool every 20 minutes while consistently taking her prescribed medication, umbilical pain, three months of diarrhea with five to six bowel movements a day with abdominal cramping, nausea and urgency, hospitalizations from her colitis flare-ups, and a diagnosis of intractable diarrhea and abdominal pain. *Lowe*, 2016 WL 624922, at *6. Nothing in the record here indicates that Plaintiff would require such ready access to a bathroom or frequent bathroom breaks that Plaintiff's residual functional capacity would be eroded to a level where Plaintiff, as the Plaintiff in *Lowe*, would be unable to work. Plaintiff's reliance on *Lowe*, is therefore misplaced and the ALJ's residual functional capacity assessment of Plaintiff is thus supported by substantial evidence, and Plaintiff's motion on this issue is DENIED.

Plaintiff further contends the ALJ erred by assigning less weight to the opinions of Dr. Wood and Dr. Nickolova, Plaintiff's treating physicians, and that the ALJ was required to re-contact Dr. Wood to resolve inconsistencies within Dr. Wood's evaluations of Plaintiff. Plaintiff's Memorandum at 14-17. Defendant maintains that the ALJ properly weighed the opinion of Dr. Wood, who reported that Plaintiff was free of gastroenterological symptoms when she took her medication as prescribed, Defendant's Memorandum at 24, and that the ALJ was entitled to reject Dr. Wood's opinions on Plaintiff's required bathroom breaks as such opinion was unsupported by Dr. Wood's physical examinations of Plaintiff. Defendant's Memorandum at 27.

---

[4] Polyuria is excessive or abnormally large production of urine.

Defendant further maintains that the ALJ correctly afforded little weight to Dr. Nickolova's opinion that Plaintiff was unable to meet competitive work standards in all areas of basic work except remembering work-like procedures, understanding and remembering short and simple instructions and interacting with others, as such findings were inconsistent with the findings of Drs. Duffy and Mangold. Defendant's Memorandum at 29-30.

In this case, the ALJ afforded limited weight to Dr. Wood's opinion that Plaintiff's symptoms would interfere with Plaintiff's attention and concentration as such opinion was inconsistent with Dr. Wood's finding that Plaintiff's symptoms were intermittent exacerbations precipitated by stress, with stools not loose enough to be considered diarrhea. (R. 27). The ALJ found Dr. Nickolova's opinion that Plaintiff was unable to meet standards for competitive work inconsistent with the results of Dr. Nickolova's global assessment of functioning ("GAF")[5] score of 61, and the results of consultative psychiatric evaluations by Dr. Duffy and Dr. Mangold. (R. 28).

The Act requires ALJs to grant significant weight to treating physician opinions supported by medical evidence in the record and afford a treating physician's opinion "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record. *See Farnham v. Astrue*, 832 F.Supp.2d 243, 258 (W.D.N.Y.). In this

---

[5] The GAF numeric scale helps to track the clinical progress of an individual's psychological health in global terms. A GAF scale between 61-70 indicates mild symptoms that may include depressed mood and mild insomnia, with some difficulties in social, occupational or school functioning. (*i.e., occasional truancy or theft within the household, functioning pretty well with some meaningful interpersonal relationships*). *See* American Psychiatric Assoc., *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000).

case Dr. Wood's opinion that Plaintiff would require frequent bathroom breaks at work, and Dr. Nickolova's opinion that Plaintiff was unable to meet competitive work standards are not supported by substantial evidence in the record. Specifically, Plaintiff consistently reported that medication relieved her gastroenterological symptoms within one hour (R. 55, 200-01), and that she regularly experienced two bowel movements daily. (R. 522). Dr. Wood noted that Plaintiff reported gastroenterological symptoms only as a result of eating processed fatty food and salads (R. 519, 522), that Plaintiff's stool was not loose enough to be considered diarrheal (R. 522), and that Plaintiff's symptoms were likely a result of IBS and not Crohn's disease. (R. 524). The ALJ's determination to afford little weight to Dr. Wood's finding that Plaintiff would require frequent bathroom breaks at work is therefore supported by substantial evidence in the record, and Plaintiff's motion on this issue is DENIED.

Plaintiff's contention that the ALJ failed to assign proper weight to Dr. Nickolova's finding that Plaintiff was unable to meet competitive work standards, and that the ALJ was required to include consideration of Plaintiff's low GAF scores, Plaintiff's Memorandum at 10-11, 15, is also without merit. Plaintiff testified that she cleaned, did minimal cooking, did dishes and laundry, made beds, vacuumed, mopped the floor, took out trash, was able to bathe and dress herself (R. 60), and had hobbies that included reading, doing puzzles, watching television, shopping and visiting friends (R. 60-61), such activities that are inconsistent with Dr. Nickolova's opinion that Plaintiff was unable to meet standards for competitive work.

The GAF scale, promulgated by the American Psychiatric Association, is no longer included in the most recent addition of the *Diagnostic and Statistical Manual of*

16

*Mental Disorders,* and an S.S.A. issued bulletin effective on July 22, 2013, and applicable here,[6] limits the use of GAF scores noting that "[t]he problem with using the GAF to evaluate disability is that there is no way to standardize measurement and evaluation" such that GAF scores should be used as opinion evidence, *i.e.*, the details of the clinician's description rather than a numerical range. *See Mainella v.* Colvin, 2013 WL 183957, at *5 (N.D.N.Y. Jan. 14, 2017). Plaintiff's GAF score of 61 indicates only mild symptoms which as discussed, Discussion, *supra,* at 14-16, serves to support the ALJ's finding that Plaintiff had only mild symptoms. Substantial evidence therefore supports the ALJ's determination to afford less weight to Dr. Nickolova's opinion that Plaintiff had a severe limitation to performing competitive work, and Plaintiff's motion on this issue is DENIED.

E. **Suitable Alternative Employment in the National Economy**

In addition to determining whether a disability claimant has the residual functional capacity to return to work, the Commissioner must establish that the claimant's skills are transferrable to the new employment if the claimant was employed in a "semi-skilled" or "skilled" job.[7] *Id.* at 294. This element is particularly important in determining the

---

[6] Changes in S.S.A. regulations and corresponding policies typically apply only to cases decided after the enactment of the change. *See Ely v. Colvin*, 2016 WL 315980, at*4 n2 (W.D.N.Y. Jan. 27, 2016) citing *Holloman v. Colvin*, 2014 WL 5090030, at *7 (E.D. Pa. Oct. 9, 2014).

[7] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength...primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching

second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

As discussed in the foregoing, Discussion, *supra*, at 10-16, the ALJ's residual functional capacity assessment of Plaintiff is supported by substantial evidence. Hypothetical questions posed to the VE based on a residual functional capacity assessment supported by substantial evidence are also supported by substantial evidence and without error because, in contrast to Plaintiff's assertion that the hypotheticals posed to the VE should have included Plaintiff's excessive need for bathroom breaks, the record, as discussed, Discussion, *supra*, at 15-16, does not support the asserted need for frequent bathroom breaks. *See Pursey v. Berryhill*, WL 2017 4985507, at *4 (W.D.N.Y. Nov. 2, 2017) (citing *Kennedy v. Astrue*, 343 Fed. Appx. 719, 722 (2d Cir. 2009) (no error where hypothetical questions posed to the VE are based on residual functional capacity assessment supported by substantial evidence)).

---

machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion (Doc. No. 13) is DENIED; Defendant's motion for judgment on the pleadings (Doc. No. 16) is GRANTED. The Clerk of the Court is ordered to close the file.

So Ordered.

*/s/ Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: August 1, 2018
Buffalo, New York